IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NILENE CREZZESS MARION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-1307-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Nilene Marion ("Plaintiff" or "Marion") seeks judicial review of the Commissioner of Social Security's ("the Commissioner") denial of her application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 *et. seq.* The Administrative Law Judge ("ALJ") found that although Plaintiff suffered from the severe impairments of diabetes mellitus and spondylosis of the lumbar spine, she still retained the residual functional capacity ("RFC") to perform a range of sedentary work. Based upon the testimony from the vocational expert ("VE"), the ALJ found that Marion was not disabled under the regulations because she retained the ability to perform past relevant work as a customer service representative and a long distance operator.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant.

Plaintiff filed an application for disability insurance benefits on November 3, 2009, alleging a disability onset date of October 27, 2008. The Commissioner denied her application at the initial claim level, and Plaintiff appealed the denial to an ALJ. After a hearing, the ALJ held that Marion was not disabled as defined in the Act. Finally, on August 31, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be

expected to last for a continuous period of not less than twelve months, the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred at step four of the sequential process by: (1) improperly discounting her credibility; (2) failing to base the RFC on medical evidence; (3) failing to include all her alleged impairments in the RFC; (4) failing to properly develop the record; and (5) failing to consider the exertional requirements of her past work.

## A. The ALJ properly discounted Plaintiff's credibility.

Plaintiff contends the ALJ improperly discounted her credibility. In particular, she alleges the ALJ erred in discrediting her subjective complaints of pain because the medical evidence actually corroborated these statements.

The ALJ's evaluation of a claimant's credibility is crucial to the RFC determination because it influences the inclusion or exclusion of alleged limitations. *See Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage,

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ articulated several well-supported reasons for discounting Plaintiff's credibility. First, the ALJ properly considered the fact that the objective medical evidence did not support the full extent of Plaintiff's alleged limitations. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (considering inconsistencies between medical evidence and subjective complaints of pain). While the ALJ acknowledged that some objective medical evidence corroborated the existence of Plaintiff's severe back impairment, he also identified other medical evidence that contradicted Plaintiff's subjective complaints to the extent she claimed disabling limitations. R. at 14-17. Second, the ALJ also properly took into account Plaintiff's refusal of recommended pain medication as a factor detracting from her credibility. R. at 17, 468; *see Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."). Additionally, the ALJ was warranted in considering the inconsistency between Plaintiff's daily activities—such as driving her car, preparing meals, shopping for groceries, washing dishes, doing laundry—and her complaints of disabling pain. R. at 17, 155-62; *see Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking vacuuming, washing dishes, doing laundry, shopping, driving, and walking[] are inconsistent with subjective complaints of disabling pain."). Finally, the ALJ rightfully considered Plaintiff's somewhat sporadic work history, including several low-earning years prior to the disability onset date, as another factor detracting from her credibility. R. at 18,

129; *see Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010). Because the ALJ stated several well-supported reasons for discounting Plaintiff's subjective complaints, the ALJ did not err in evaluating her credibility.[3]

**B.      The ALJ relied on medical evidence in formulating Plaintiff's RFC.**

Next, Plaintiff asserts that the ALJ erroneously failed to consider medical evidence in formulating her RFC. In particular, Plaintiff argues that the opinion of a reviewing physician, which the ALJ relied upon in formulating the RFC, does not constitute medical evidence as defined in the applicable regulations.

Plaintiff's argument is flawed in multiple respects. First, as a matter of law, an ALJ may consider the opinion of a non-treating, non-examining physician in formulating Plaintiff's RFC. *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). Consequently, the ALJ's consideration of the opinion of Dr. Mark Faber, M.D. ("Dr. Faber"), who only reviewed Plaintiff's medical records before opining about her functional ability, was not erroneous. Moreover, the ALJ did not solely rely upon Dr. Faber's opinion in formulating the opinion. Rather, as demonstrated by the ALJ's exhaustive summary of the objective medical record evidence, the ALJ also considered a litany of treatment notes, several diagnostic tests, and the opinion of an examining physician, Dr. Cedric Fortune, M.D. ("Dr. Fortune"). R. at 15-17. Thus, it is clear from the record that the ALJ relied upon medical evidence in formulating Plaintiff's RFC.

---

[3] While Plaintiff's argument regarding her back pain is somewhat unclear at times, it appears that she also alleges the ALJ erred in failing to include "back pain" as an explicit limitation in the RFC. This argument lacks merit. The record reveals that the ALJ clearly considered the severe impairment of spondylosis, which caused some of Plaintiff's pain. R. at 13, 15. Furthermore, the ALJ explicitly factored Plaintiff's pain into the restrictions which led to her being precluded to sedentary work. R. at 14-18, 49-51, 417-22. However, it is equally clear that the ALJ did not—and was not required to—include the full extent of Plaintiff's alleged limitations due to pain. Thus, the ALJ did not err in failing to include an explicit limitation for "back pain" in Plaintiff's RFC.

**C.    The ALJ did not fail to properly develop the record.**

Related to the preceding argument, Plaintiff contends that the ALJ failed to adequately develop the record. Relying on *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), Plaintiff argues that an ALJ may never rely upon a non-examining, non-treating physician's opinion in formulating a claimant's RFC. Thus, Plaintiff concludes that the ALJ's reliance on Dr. Faber's opinion requires reversal. The Court disagrees.

As noted in *Casey v. Astrue*, *Nevland* only precludes reliance on a reviewing physician's opinion at step five of the sequential process. 503 F.3d at 697. Thus, in this case, the ALJ's consideration of Dr. Faber's opinion in formulating the RFC at step four does not constitute reversible error.[4] Also, the ALJ's consideration of Dr. Fortune's opinion further bolsters the conclusion that the ALJ committed no error. R. at 16. Because sufficient medical evidence supported Plaintiff's ability to function in the workplace, the ALJ did not fail to develop the record. *See Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work.").

**D.    The ALJ included all impairments supported by the record evidence.**

Plaintiff asserts that despite record evidence demonstrating that Plaintiff suffered from depression, Carpal Tunnel Syndrome, and degenerative arthritis, the ALJ failed to include the functional limitations from these non-severe impairments. Specifically, Plaintiff suggests that these impairments and others support limitations regarding her ability to feel, grip, and perform fine manipulation. The Court disagrees.

---

[4] Plaintiff makes abundantly clear in her brief that she is only challenging the ALJ's decisions at step four of the sequential process. *See* Pl.'s Br. at 24 ("In the instant case, the ALJ found at step four that Marion is able to return to her past relevant work. Thus, Marion's brief focuses on step four of the Commissioner's sequential evaluation process an analyzes whether or not substantial evidence exists to support the ALJ's Unfavorable Decision at step four.").

Although the ALJ must consider the combined effect of both severe and non-severe medically determinable impairments in formulating a claimant's RFC, *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008), the burden of demonstrating the functional limitations of these impairments ultimately lies with the claimant. *See Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). Here, while there is record evidence that Plaintiff suffered from the non-severe impairments discussed above, Plaintiff failed to present evidence regarding the functional limitations that these impairments impose on her ability to work. *See Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) (holding that the ALJ did not err in failing to include certain limitations because "there [was] no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities.") (internal quotation marks omitted). Furthermore, as the Commissioner notes, Dr. Fortune's opinion explicitly contradicts Plaintiff's purported limitations regarding her ability to feel, grip, and perform fine motor manipulation. *See* R. at 419 (noting that Plaintiff showed intact sensation in her hands and fingertips, normal fine motor ability, and negative Tinel's and Phalen's tests). Consequently, the ALJ did not err in failing to include these purported limitations.

### E.     The ALJ did not err in finding that Plaintiff could perform her past relevant work.

Finally, Plaintiff contends the ALJ committed reversible error by failing to inquire whether Plaintiff could perform the non-exertional requirements of her prior work despite her functional limitations. This argument lacks merit.

At step four of the sequential process, the ALJ must consider whether a claimant can perform her past work despite her functional limitations. *See* 20 C.F.R. § 404.1520. In making this determination, the ALJ may rely upon the testimony of the vocational expert. *See Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007). Here, in response to the ALJ's inquiries, the

vocational expert testified that despite Plaintiff's functional limitations she could still perform the non-exertional requirements of her past work. R. at 53-54. Explicitly relying on this testimony in his opinion, the ALJ found that Plaintiff was not disabled because she retained the RFC to perform her past relevant work. R. at 18. Thus, there is no error here.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 23, 2014   /s/ Greg Kays
                                        GREG KAYS, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT